## MORSE v. LEWIS et al.
### No. 3221.

Circuit Court of Appeals, Fourth Circuit.
Jan. 12, 1932.

Henry Simms, of Huntington, W. Va., and Hite H. Huffaker, of Louisville, Ky. (Charles F. Guenther, Jr., of San Antonio, Tex., on the brief), for appellant.

Robert S. Spilman and George E. Price, both of Charleston, W. Va. (Price, Smith & Spilman, of Charleston, W. Va., on the brief), for appellees.

Before PARKER and SOPER, Circuit Judges, and BAKER, District Judge.

SOPER, Circuit Judge.

The bill of complaint in this suit in equity set up a claim of title to the same tract of 20,000 acres of land in Kanawha county, W. Va., as was the subject of the suit of McMullen v. Lewis, 32 F.(2d) 481, decided by this court on April 9, 1929. The claim in each case rested upon substantially the same allegations of fact, and in each the sufficiency of the allegations was challenged by a motion to dismiss the bill, which was granted by the District Court. In the earlier case, Nelson V. McMullen, the son of John Lewis McMullen, and a grandson of William A. McMullen, alleged that his grandfather had died intestate in 1872, seized of the lands in question, and complained that his heirs at law had been deprived of the property by an award of arbitrators in certain suits in the circuit court of Kanawha county, later confirmed by the judgments of the court; and that these awards and judgments had been wrongfully obtained by fraudulent conspiracy among certain parties to the litigation and their attorneys. The judgments upheld the claims of one John D. Lewis, whose title was derived from an earlier grant than that upon which the McMullen heirs relied. The complainant sought to avoid these judgments, so far as they affected him. In the pending case, Rosa Cooke Morse makes similar allegations and prays similar relief, as the daughter of Rhoda McMullen Cooke, a granddaughter of William A. McMullen.

The case of Nelson V. McMullen was tried in the District Court by Circuit Judge Northcott of this court, upon the designation of the Senior Circuit Judge of the Circuit, which became necessary when the District Judge, considering himself disqualified, declined to sit. Judge Northcott's opinion was set out almost in toto in the opinion of this court, wherein it was approved and affirmed. From these opinions it appears that the bill was dismissed (1) because its averments were not made with the requisite degree of certainty, particularity, and detail to show the fraudulent conspiracy, and (2) because the lapse of fifty years between the entry of the judgments in the circuit court of Kanawha county and the filing of the suit to set them aside was so long that under the circumstances, the complainant and his father were guilty of such laches as effectually barred the prosecution of the suit.

■ There is no substantial difference between the bill in the suit of Nelson V. McMullen and that in the pending suit in respect to the allegations wherein the fraudulent conspiracy is described. It was pointed out, in the opinion of this court in the prior case, that the exhibits filed with the bill did not support the grave charges therein made, but tended directly to the contrary both in respect to the conspiracy charged and the deception of the arbitrators alleged to have been accomplished. The complainant in the pending case endeavored to avoid the effect of this decision by the simple device of withholding the exhibits from the present record. This palpable omission, however, availed the complainant nothing, for the District Court took judicial notice of the proceedings in the earlier case, and considered the exhibits as if filed with the present bill. That document indeed referred expressly to the suit of Nelson V. McMullen and the decision of this court. We think that the action of the District Court in this respect was eminently proper, for the award of the arbitrators, alleged to have been fraudulently obtained, formed the identical and essential basis of both suits; and it would have been a futile and senseless proceeding, under the circumstances, for the court to have closed its eyes to an undisputed fact shown by its own records.

■ The general rule undoubtedly is that a court will not travel outside the record of the case before it in order to take notice of the proceedings in another case, even between the same parties and in the same court, unless the proceedings are put in evidence; and the rule is sometimes enforced with considerable strictness. National Surety Co. v. U. S. (C. C. A.) 29 F.(2d) 92; Paridy v. Caterpillar Tractor Co. (C. C. A.) 48 F.(2d) 166. But in exceptional cases, as high authority shows, the dictates of logic will yield to the demands of justice, and the courts, in order to reach a just result, will make use of established and uncontroverted facts not formally of record in the pending litigation. Thus in De Bearn v. Safe Deposit Co., 233 U. S. 24, 34 S. Ct. 584, 58 L. Ed. 833, the Supreme Court, in considering the sufficiency of a bill of complaint on demurrer, took judicial notice of the proceedings and pleadings in cases between the complainant and other parties which it had previously considered; in Dimmick v. Tompkins, 194 U. S. 540, 24 S. Ct. 780, 48 L. Ed. 1110, upon an application for a writ of habeas corpus by a prisoner who claimed that he was being detained in prison beyond the expiration of his term, the court took judicial notice of the record in a prior case wherein it had denied the prisoner's petition for certiorari asking for a review of the sentence imposed, and held that since this record showed that the detention of the prisoner was due to his own efforts to obtain a reversal of the judgment, the writ of habeas corpus should be refused; and in National Fire Ins. Co. v. Thompson, 281 U. S. 331, 50 S. Ct. 288, 74 L. Ed. 881, the court took judicial notice of a fact shown by the record in an earlier case between the same parties, to clear up an uncertainty in the record before it. See also United States v. California Canneries, 279 U. S. 553, 49 S. Ct. 423, 73 L. Ed. 838; Craemer v. Washington, 168 U. S. 124, 18 S. Ct. 1, 42 L. Ed. 407; Bienville Water Supply Co. v. Mobile, 186 U. S. 212, 22 S. Ct. 820, 46 L. Ed. 1132; Ingersoll v. Coram, 211 U. S. 335, 29 S. Ct. 92, 53 L. Ed. 208; Coram v. Davis (C. C.) 174 F. 664; Freshman v. Atkins, 269 U. S. 121, 46 S. Ct. 41, 70 L. Ed. 193; Butler v. Eaton, 141 U. S. 240, 243, 11 S. Ct. 985, 35 L. Ed. 713; E. I. Du Pont de Nemours & Co. v. Richmond Guano Co. (C. C. A.) 297 F. 580. It follows that the prior decision of this court as to the sufficiency of the allegations of the bill applies with equal force in the pending case.

■■ Even if we should ignore the contents of the exhibits which were before this court in the case of Nelson V. McMullen, we could not accept as sufficient certain allegations which constitute important elements of the conspiracy charged in the bill. It is there alleged that the conspirators concealed and withheld from the arbitrators the record of the circuit court of Kanawha county in two

cases between the McMullen and the Lewis interests relating to the lands in controversy, wherein the McMullen title was established and the invalidity of the Lewis claim was shown. But the bill also shows that the judgments in these two cases were appealed to the Supreme Court of West Virginia, and that the decisions of that court were published in its official reports as Lewis v. McMullin, 5 W. Va. 582, and McMullin v. Lewis, 5 W. Va. 145; and that a number of other suits between the same interests were held in abeyance pending the decision of these appeals. The decisions were handed down in 1872, and the volume, 5 West Virginia, was published in 1873 before the arbitration took place. The arbitrators themselves were lawyers, who of course must have had access to the reports. The decisions do not establish the McMullen as opposed to the Lewis title in the large tracts of land in dispute; and the more important of the two cases was sent back for retrial. The bill makes no attempt to show how it would have been possible to have concealed from the arbitrators published decisions of the highest court of the state relative to the very controversy which the arbitrators were selected to determine. A conspiracy should be alleged with such particularity as to show an unlawful agreement between the parties charged; but in this case the allegations that the arbitrators were deceived by the fraudulent withholding of information are so inconsistent with other allegations of the bill, that the court cannot accept them as proved on this motion to dismiss.

▪ It is likewise true that the observations of this court in the case of Nelson V. McMullen v. Lewis, on the subject of laches, are applicable here. The pending bill shows that Rhoda McMullen Cooke, the mother of the complainant, lived at Owensboro, in the neighboring state of Kentucky, until 1885; that is to say, for thirteen years after her father's death, and eight years after the entry of the judgments complained of. Thereafter she lived for twenty-three years until her death in 1908 at Dennison, in the state of Texas. During all of this period, she took no steps to investigate the matter now brought before the court. The explanation of this inaction during thirty-one years in this case is as unsatisfactory as that offered in the earlier case for the delay of forty-two years, during which the father of Nelson V. McMullen lived, after the arbitration was concluded. It is true that the bill alleges that Mrs. Cooke knew nothing about the location of the lands in question and was not a party to the arbitration, but there is no allegation,

and doubtless could be none, that she had no knowledge of her father's interests and no means of acquiring knowledge thereof after her father's death; particularly in view of the fact that the fourteen ejectment suits, later submitted to arbitration, were then pending. Two cases, as we have seen, had already gone to the Supreme Court of Appeals of West Virginia, and had been reported in the published decisions of that court.

▪ Mrs. Cooke's daughter, the complainant in this case, is chargeable with her mother's unexplained activity upon the same principle that Nelson V. McMullen was held to be chargeable not only with his own laches, but also the laches of his father in the prior suit. She alleges in the bill that when the suits in ejectment were submitted to arbitration, she was only six years of age, and then resided at Owensboro, Ky., where she continued to reside until 1888, at which time her parents moved and took her to Texas, where she has since resided. She further alleges that she knew nothing of the arbitration or of the awards until she was advised of the suit of Nelson V. McMullen, decided, as we have shown, on April 9, 1929. It is obvious, however, that these allegations of ignorance on her part do not explain the mother's failure to assert title to the land.

▪ We do not overlook the allegation in the present bill that Mrs. Cooke was not a party to the arbitration suits, and was not served with legal process therein. This allegation, however, is contradicted by the exhibits filed in the earlier case. These records show that after the award of the arbitrators had been returned to the circuit court of Kanawha county, summons were issued against the McMullen heirs to show cause, if any they had, why the award should not be confirmed. The first summons was returned as not having been served upon Mrs. Cooke, and this circumstance doubtless explains the allegation in the bill of complaint. But a careful examination of the subsequent proceedings shows that Mrs. Cooke and other heirs later appeared and filed an answer giving reasons why the award should be overruled; and after the adverse judgments of the circuit court of Kanawha county were rendered, the heirs petitioned the Supreme Court of Appeals of West Virginia for a writ of error which that court denied. So it appears that with regard to the defense of laches, there is no material difference by which the pending case may be distinguished from that considered in our prior decision.

▪ Judge Northcott was designated to try

this case also because of the disqualification of the District Judge. The complainant filed an affidavit under 28 USCA § 25, to the effect that Judge Northcott had a personal bias and prejudice against her, and in favor of the defendants, basing her action upon information and belief that "he is now closely socially associated with the defendant heirs, or many of them, and that he has been closely associated both socially (and) in business circles with defendant heirs for many years;" and giving as additional reasons the rulings of the judge adverse to Nelson V. McMullen in the prior suit. Attached to the affidavit was the certificate of an attorney that he had prepared the affidavit and that it was made in good faith and not for purposes of delay. It appears from an allegation of the bill of complaint that the attorney was a resident of San Antonio, Tex., but an examination of the rolls showed that he had never been admitted to practice as an attorney in the District Court of the United States for the Southern District of West Virginia. The judge took up the sufficiency of the affidavit at a hearing in open court at which the Texas lawyer did not appear, but complainant was represented by an attorney from Louisville, Ky., and one from Huntington, W. Va. They were requested by the judge to express an opinion upon the sufficiency of the affidavit, but each declined to do so on the ground that he was unfamiliar with the practice in such matters. Each was offered an opportunity to sign the certificate, but declined to do so. Counsel for the defendants opposed the retirement of the judge. Under these circumstances it was incumbent upon the court to pass upon the sufficiency of the affidavit as a ground for retirement. Berger v. United States, 255 U. S. 22, 36, 41 S. Ct. 230, 65 L. Ed. 481. Accordingly, the judge did so, and ruled that the affidavit was insufficient; and having no knowledge of business or social relations on his part with the defendants, he proceeded to hear and determine the motion to dismiss the bill of complaint.

■ This action is assigned as error in this appeal, but in our opinion the judge was right and it was his clear duty to proceed with the case. The adverse rulings which he had made in the Nelson V. McMullen Case constituted the burden of the complaint in the affidavit. Such actions, however, are insufficient to support an affidavit of personal bias and prejudice and to cause the retirement of the judge. In Ex parte American Steel Barrel Co., 230 U. S. 35, 43, 33 S. Ct. 1007, 1010, 57 L. Ed. 1379, it was said: "The basis of the disqualification is that 'personal bias or prejudice' exists, by reason of which the judge is unable to impartially exercise his functions in the particular case. It is a provision obviously not applicable save in those rare instances in which the affiant is able to state facts which tend to show not merely adverse rulings already made, which may be right or wrong, but facts and reasons which tend to show personal bias or prejudice. It was never intended to enable a discontented litigant to oust a judge because of adverse rulings made, for such rulings are reviewable otherwise, but to prevent his future action in the pending cause."

See also Berger v. U. S., 255 U. S. 22, 33, 41 S. Ct. 230, 65 L. Ed. 481; Benedict v. Seiberling (D. C.) 17 F.(2d) 831; Cuddy v. Otis (C. C. A.) 33 F.(2d) 577. The same rule is equally applicable when complaint is made of rulings by the judge in a prior related case. Sacramento Fruit Lands Co. v. Tatham (C. C. A.) 40 F.(2d) 894; Craven v. U. S. (C. C. A.) 22 F.(2d) 605, 606; Parker v. New England Oil Corporation (D. C.) 13 F.(2d) 497. In the pending case, the utter insufficiency of the charge of prejudice in this respect is the more apparent from the fact that all of the judge's rulings in the first suit were affirmed by this court on appeal.

■ Nor were the facts relative to Judge Northcott's alleged social and business association with the Lewis heirs stated with such particularity and certainty as to form a sufficient basis for the affidavit. There were forty-one defendants in this case, who were residents and citizens of the states of West Virginia, Virginia, Tennessee, Maryland, Alabama, Oklahoma, Colorado, and New York; and yet the affidavit did not contain a single particular to sustain or explain the broad statement of social and business intimacy. It must be borne in mind that the judge has no authority to pass upon the truth of the charges, but is required to retire from the trial of a case if the affidavit is sufficient on its face although he has personal knowledge that its contents are untrue. Berger v. U. S., 255 U. S. 22, 33, 41 S. Ct. 230, 65 L. Ed. 481. The only restraint upon an unscrupulous litigant, as was pointed out in that case, is the fear of a prosecution for perjury for false affidavit. Under these circumstances it is properly held that mere general allegations of intimacy of the judge with opponents of the affiant are insufficient. Duncan v. U. S. (C. C. A.) 48 F.(2d) 128. The Act of Congress, 28 USCA § 25, says that every such affidavit shall state the facts and

the reasons for the belief that the bias or prejudice exists. Reasonably construed, the statute requires not merely the conclusion of the affiant drawn from the facts, but a statement of the facts themselves, and these should be set out with at least that particularity one would expect to find in a bill of particulars filed by a pleader in an action at law to supplement and explain the general statements of a formal pleading. See Johnson v. U. S. (D. C.) 35 F.(2d) 355; Keown v. Hughes (C. C. A.) 265 F. 572, 577; Saunders v. Piggly Wiggly Corporation (D. C.) 1 F.(2d) 582, 583.

■ The affidavit was also defective because it was not accompanied by a certificate of counsel of record. It is provided by 28 USCA § 394, that in the courts of the United States, parties may plead their own cases or by the assistance of such counsel or attorneys at law as by the rules of the court are permitted to manage and conduct cases therein. The rules of the United States District Court for the Southern District of West Virginia provide for the admission of persons to practice as attorneys or counsel in the court who have previously been admitted to practice in the Supreme Court of the United States and the superior courts of the state. Admission is made only upon motion of a member of the bar in open court and upon the signature of the roll of attorneys and the taking of an appropriate oath. The Texas attorney who signed the certificate in this instance had not been admitted to practice in the trial court and therefore was not qualified to practice as an attorney in the case. The qualified attorneys who were present in court were given an opportunity, as we have seen, to sign the certificate, but declined, a significant action, since they were also the attorneys for Nelson V. McMullen, the complainant in the prior case. This requirement is not merely technical, but is one of the safeguards provided by the act to insure as far as possible that no affidavit of prejudice will be made except in good faith. It is important that the court, which has no means of protecting itself from unjustified attack, shall at least have the protection afforded by the certificate of a responsible member of the bar. See Ex parte N. K. Fairbank Co. (D. C.) 194 F. 978; Saunders v. Piggly Wiggly Corp. (D. C.) 1 F.(2d) 582. For all of these reasons, the affidavit in the pending case was insufficient for the purpose in view.

The decree of the District Court is affirmed.