## AMERICAN BRAKE SHOE & FOUNDRY CO. v. INTERBOROUGH RAPID TRANSIT CO.
### No. 7.

District Court, S. D. New York.
Aug. 2, 1933, Sept. 30, 1933.

See, also, 1 F. Supp. 820; 4 F. Supp. 68.

MANTON, Circuit Judge.

There are pending before this court (a) an application to confirm the report of the special master recommending that the application to remove William Roberts and substitute Nathan L. Amster as receiver of the Manhattan Railway Company be denied and (b) the petition of the Manhattan Railway

Company for the appointment of Nathan L. Amster as coreceiver.

While these applications were pending and undecided, an affidavit of personal bias and prejudice of the presiding judge was filed by the Manhattan Railway Company. That affidavit and the circumstances of its presentation will first be considered.

This alleged affidavit of personal bias and prejudice, sworn to July 20, 1933, by Secretary-Treasurer Mullin of the Manhattan Railway Company, was left with me on July 20, 1933, in the afternoon by Mr. Franklin's representative, who then stated that Mr. Franklin wished me to read it before he formally filed it. After reading it, I requested Mr. Franklin to call at my chambers, which he did on July 21, 1933, in the afternoon. After a conversation, which I do not deem necessary to repeat in this memorandum, and which is grossly misstated in Mr. Franklin's affidavit of July 27, 1933, Mr. Franklin asked leave to withdraw the affidavit, stating that it was filed under a misapprehension. I told him that I could only permit this to be done if he filed a formal application for its withdrawal. Upon his promise that he would do so, I permitted him to take the affidavit with him when he left my chambers on that day. He complied with this requirement later that day. The withdrawal notice thus served upon me will be filed with the affidavits and other papers in the clerk's office.

After 4 o'clock on July 27, 1933, I received a copy of the same affidavit of prejudice sworn to the 20th of July, 1933, and "a supplemental affidavit of prejudice" by Charles Franklin sworn to the 27th of July, 1933. They are herewith filed in the office of the clerk of the District Court for the Southern District of New York.

Section 21 of the Judicial Code (28 US CA § 25) requires an affidavit of personal bias and prejudice to be filed "not less than ten days before the beginning of the term of the court, or good cause shall be shown for the failure to file it within such time." It has not been filed within the time required, and good cause for failure so to do is not shown.

Amster became the president of the Manhattan Railway Company in November, 1932, and immediately thereafter Mr. Franklin became its attorney. Amster first attempted to become a coreceiver of the Manhattan Railway Company when, on September 6, 1932, it filed its petition to intervene in the suit of American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Company. At that

time William Roberts, its president, was appointed and later qualified as receiver. It was then thought unnecessary to appoint a second receiver. The court, however, reserved the question of appointing a coreceiver until reason therefor should appear. Amster's application was denied.

Amster caused the institution of the Johnson suit in which he attacked the jurisdiction of this court, for the same purpose. Mr. Franklin, his attorney, stated this at one of the hearings.

When the Circuit Court of Appeals for the Second Circuit rendered its decision in the case of Johnson v. Manhattan Railway Company, 61 F.(2d) 934, on December 7, 1932, Amster began a new proceeding asking for the removal of Mr. Roberts and his own appointment as receiver. Issues were raised which were necessary to send to a special master, who filed his report recommending the denial of the application to remove Mr. Roberts. After an adverse decision in the Supreme Court in Johnson v. Manhattan Railway Company, 289 U. S. 479, 53 S. Ct. 721, 77 L. Ed. 1331 (May 29, 1933), he made the application to be appointed coreceiver.

Mr. Franklin filed an application in the proceeding asking for an allowance of $75,000 for services in the case of Johnson v. Manhattan Railway Company in which he attacked the jurisdiction of this court. He based his application in part upon the claim that he had settled the jurisdictional question in favor of Judge Manton's jurisdiction. He stated in the affidavit: "The decision of the United States Supreme Court in the Johnson Case has definitely removed all doubt regarding the jurisdictional objection of both the Interborough and Manhattan Receiverships, and has thereby freed from question or embarrassment the receivership estate in which are involved securities and properties valued in excess of Five Hundred Million ($500,000,000.) Dollars. * * * so that by said decision the finality of the Senior Circuit Judges right to act in the American Brake Shoe case has now been firmly established."

And further: "I therefore respectfully submit that I have performed a substantial service in having the power of Judge Manton vindicated, which has enured to the benefit of the receivership estate, and to all parties concerned therein."

Now, after applying for the appointment of Amster as coreceiver, it is stated he was told Amster would be appointed, but still he files this affidavit of personal bias and prejudice in an effort to obtain the appointment

of Amster as coreceiver. All of this indicates bad faith. As a plain showing of bad faith and the purpose of filing this affidavit of prejudice and personal bias, Franklin's statements in open court at hearings are interesting.

At a hearing in open court on June 28, 1933, Mr. Franklin said:

"Mr. Franklin: If your Honor please, may I take up a matter which it seems to me would be appropriate? I do not feel that I want to be too persistent. At the same time, the position of being the sole objector to a proceeding of this kind is neither easy nor is it pleasant, particularly as I am representing the directors and stockholders of the Manhattan Railway Company. I would like, therefore, if your Honor will grant leave to renew the application that I made at the inception of this receivership. Your Honor has stated in the past, I think it was on the day that the receivership was extended to the Manhattan Railway Company, I made an application to your Honor, then representing the Manhattan Railway Stockholders' Protective Committee, representing approximately ten millions of securities of that company, for the appointment of Mr. N. L. Amster as the receiver, or as a co-receiver of the Manhattan Railway Company. Your Honor after considering the matter a moment stated to me and to counsel present that if ever the time came when it seemed necessary or advisable to make such an appointment, that I could renew the motion. * * * I think it is the proper thing to do, and I feel that I would like, if possible, to contribute to harmonizing or to a reign of harmony in this case. I do not want to be the sole objector. At the same time, I have no alternative, and I respectfully ask leave to renew my motion at this time."

And again:

"Since November 11th, I think it was, Mr. Amster has been president of this company, and the directors have unanimously done everything that they could humanly do to make your Honor understand that they expected to be represented.

"I do not want to be, if I can help it, a lone objector, particularly in this situation.

"Nothing has been said about the long opinion that your Honor read. I thought it was very good and very clear and a proper supplement to what the Supreme Court has said, but I feel we should try to remove all discord and create a reign of harmony here, and I do not see how that can be done unless our application is granted; then the directors or rather the owners of this company, will feel that they are being properly cared for, and these important matters should not be allowed to go on without representation in the receivership. * * *

"Mr. Amster personally owns in excess of thirty thousand shares, and his interests represent an additional one hundred thousand shares. At the meeting I think the vote was 239,000 shares out of a total of a little under six hundred thousand shares. * * *

"Under the circumstances I feel that certainly the Manhattan Railway Company and its president, Mr. N. L. Amster, should be given official recognition."

On July 13, 1933, he said in open court: "* * * now that these receiverships have been placed on a jurisdictional basis above question, now that your Honor's position was completely vindicated by the decision of the Supreme Court—it seemed to us that a constructive effort should be made to overcome the deep-rooted feeling on the part of the stockholders of the Manhattan Railway Company that these receiverships are being conducted in the interest of the Interborough Rapid Transit Company and to the detriment of the interests of the Manhattan Railway Company. If the Court please, those fears would be dispelled by the appointment of the Manhattan Railway Company's president as receiver or as co-receiver of these properties. We ask for no other change, of counsel or otherwise. Our second reason was that, since counsel for all of the interested parties had expressed their wish that your Honor should continue in the proceedings, with unstinted praise, I made it plain, as general counsel for the Manhattan Railway Company, and also as the petitioner's counsel in the so-called Johnson suit, that we wish to assist in bringing about a complete reign of harmony, and therefore I ask the Court to exercise its discretion in favor of our application which, as your Honor and counsel present know, we have sought from the inception of these receivership proceedings, and particularly so since the ousting of the management headed by Mr. Roberts."

And again he said:

"Now, the other day, when I mentioned this matter, Mr. Roberts said, 'If your Honor appoints Mr. Amster, I want to tell you I am going to resign' or words to that effect. Even Mr. Hughes said his firm would decline to serve if Mr. Amster were appointed. Now, if the Court please, there is no reason or rhyme in any statement like that. These people have a right to resign if they want to and

218

I do not think it is fair to try to preface my application by making that statement; besides, those are pure threats and intimidation of the Federal Court, absolutely wrong to say anything like that while my application is pending.

"I know, and know that your Honor, with all your experience knows, that that is wholly improper, both what Mr. Hughes asserts and what Mr. Roberts asserts."

At these late dates there was no thought of personal bias or prejudice.

 This is plainly an affidavit to disqualify the judge before whom proceedings are pending unless he appoints Amster a receiver. Apparently, if he would make the appointment, prejudice and bias do not exist. The affidavit of personal bias and prejudice was filed while the application for Amster's appointment was awaiting decision in order to influence that decision. This, obviously, is wholly improper. The merits of the application require its denial. Of course, the court, if it felt justified, would grant the application uninfluenced by this threat.

 For the purpose of the record, the facts and circumstances surrounding the presentation of the affidavits are set forth, but as a matter of law, when such an affidavit is filed, the recused judge is restricted to a determination of its timeliness and legal sufficiency. Section 21 of the Judicial Code (28 USCA § 25); Berger v. United States, 255 U. S. 22, 41 S. Ct. 230, 65 L. Ed. 481. The statement of facts alleged, no matter how false, scandalous, or libelous, the affidavit or certificate, must be accepted as true by the recused judge. However, its legal sufficiency is open to the recused judge to determine. The Supreme Court, recognizing the possibility of abuse, has determined it to be not too great a price to pay in order that the wholesome and well-founded public conviction of the impartiality of the federal courts may have the additional safeguards which section 21 affords. Berger v. United States, supra. But the exercise of such power must conform strictly to the requirements of the statute granting it. The affidavit must be timely and must be legally sufficient.

 This affidavit was not timely. Mullin, the affiant, also swore, on September 2, 1932, to the petition of Manhattan Railway Company seeking to become a party and requesting receivership. The Manhattan Railway Company, which presents the affidavit, made the several applications seeking to have Amster appointed receiver. Franklin, who has

certified the affidavit, appeared at the hearings as stated above representing Manhattan Railway Company, and brought before the court the formal applications for Amster's appointment as receiver. It is apparent from these proceedings and statements that the affidavit is now too late to comply with section 21 of the Judicial Code (28 USCA § 25). Ex parte American Steel Bbl. Co., 230 U. S. 35, 33 S. Ct. 1007, 57 L. Ed. 1379; Lipscomb v. United States, 33 F.(2d) 33 (C. C. A. 8); Bishop v. United States, 16 F.(2d) 410 (C. C. A. 8); De Ran v. Killits, 8 F.(2d) 840 (C. C. A. 6); Chafin v. United States, 5 F. (2d) 592 (C. C. A. 4).

 Moreover, the affidavit is legally insufficient. The facts alleged fail to support the charge of personal bias and prejudice. They are wholly irrelevant to such a charge or refer to the judicial consideration and determination of questions before the recused judge rather than to an attitude or acts of personal bias or prejudice. A clear statement of the law as to this is found in Johnson v. United States (D. C.) 35 F.(2d) 355, 357, where it is said: "However false, there can be no denial, but the charge of personal bias or prejudice must be accepted as true. To avoid abuses, the law requires that the affidavit be of legal sufficiency. That is, that the charge be of personal bias or prejudice, that the facts and reasons for the charge be set out and give fair support to the accusation, and that upon its face the affidavit presents evidence of good faith. To that end mere rumors, gossip, general statements that affiant by some person is informed and believes that at some time, some place, some occasion, the judge expressed sentiments manifesting bias or prejudice, are not enough, but informant, and time, place, occasion of, and the judge's expressions, and that the bias or prejudice is personal, all must be set out in the affidavit. This alone will enable the affidavit to bear on its face that evidence of good faith which is necessary before it can be held to be legally sufficient. See Berger v. U. S., supra. Otherwise, the penalties of perjury and disbarment are no restraint on the litigant and counsel; for otherwise it is not even a possibility of either being invoked, much less carried to successful conclusion, however false be affidavit and certificate."

The practice to be followed is to permit the filing of the affidavit, which will be done, to consider its timeliness and legal sufficiency, and then to order it stricken from the record if insufficient or to certify withdrawal to the Senior Circuit Judge if sufficient in law.

Berger v. United States, supra; Bommarito v. United States, 61 F.(2d) 355 (C. C. A. 8); Morse v. Lewis, 54 F.(2d) 1027 (C. C. A. 4). The affidavit is legally insufficient. See Morse v. Lewis, supra; Craven v. United States, 22 F.(2d) 605 (C. C. A. 1); Henry v. Speer (C. C. A.) 201 F. 869 (C. C. A. 5); Benedict v. Seiberling (D. C.) 17 F.(2d) 831; United States v. Fricke (D. C.) 261 F. 541.

Both affidavits and the withdrawal notice are herewith filed and the affidavits stricken from the record.

During the receivership there developed considerable conflict between two groups of stockholders which might be said to be represented by Mr. Amster and Mr. Roberts. At the last annual meeting in November, 1932, the Roberts group lost control and the Amster group elected its board of directors. It immediately resulted in a proceeding to remove Roberts made on an application sworn to December 7, 1932, charging Roberts with mismanagement and domination by the Interborough Rapid Transit interests, and it specifically asked for the substitution of Amster as receiver.

The master, after a lengthy hearing and due consideration of the testimony, has found that the charges made against Mr. Roberts are insufficient to require his removal. It is clear that they were instituted with the view of securing Amster's appointment as receiver in place of Roberts, and an examination of the record justifies the result reached by the master, and his report is confirmed and the petition to remove Roberts is denied.

The present application that Amster be appointed coreceiver of the Manhattan Railway Company property is opposed by the trustees of the first and second mortgages on the railroad property amounting to about $45,000,000, by separate committees representing bondholders under the mortgages, and by all other groups of shareholders except the Amster group of stockholders. In the face of this substantial and determined opposition to Mr. Amster's appointment, I cannot feel that it would produce the "harmony" so urgently sought by Mr. Franklin in his plea for his appointment. Nor is the circumstance of his recent accession to the position of president of the company a complete reason for his appointment as receiver. Roberts' long tenure of office and his experience had material weight on the occasion of his appointment, but such reasons do not apply equally to Mr. Amster who has recently become president. A receiver is a representative of the court, not of the corporation.

The intimate knowledge of the affairs of the corporation by one of its officers, otherwise possessing the confidence of the court by reason of his own character and reputation, strongly recommends such officer for the position of receiver, but the court will not change its representative merely because of the change of corporate control. Mr. Amster's conduct throughout this litigation has not inspired such confidence as would warrant his becoming a representative of the court.

In denying his application, the court does not suggest that a coreceiver should not be appointed. When the Manhattan Railway Company intervened and Mr. Roberts was appointed on September 6, 1932, the question of the appointment of a coreceiver was reserved until the need therefor should arise. The present circumstances make a coreceiver desirable. The Manhattan Railway Company is a nonoperating company, wholly dependent on the enforcement of its lease to obtain profit from the operation of its properties. Application No. 5 of Manhattan Railway Company's receiver presents many problems of business and law arising from the lease arrangement. These problems make desirable the services of a coreceiver. In making the selection of such a coreceiver, the court will willingly hear other suggestions from the shareholders of the so-called Amster group. If none is presented within a reasonable time, a coreceiver will be appointed.

Orders will be entered accordingly.

### Addendum.

By failing to refer to one phase of the matter discussed in the foregoing memorandum, the implication should not arise that it has been lost sight of. It seems reasonably clear that the submission of a belated affidavit of prejudice to a judicial officer before whom litigated matters are pending undecided involves contempt of court, as an improper effort to influence the decision of the particular judicial officer. It is not a matter in any sense personal with me. I consider it only as a grossly improper gesture directed toward an officer of the court. In this spirit, I shall confer with some of my associates before deciding whether a citation for contempt for all persons implicated in the misconduct described shall issue.

### Memorandum.

In order that this memorandum may be easily understood, though its length is limited, brief reference should be made to the opinion of the United States Supreme Court in

the two cases of Johnson v. Manhattan Railway Co. and Boehm v. Manhattan Railway Co. (both cases having been heard together) 289 U. S. 479, 53 S. Ct. 721, 77 L. Ed. 1331, rendered by Mr. Justice Van Devanter and concurred in by his associates of the court. In these cases, the same litigant to whom reference will be made later questioned the long-established practice of self-designation to hold a District Court by the Senior Circuit Judges of the different circuits of the United States.

The attack made upon my jurisdiction and powers as Senior Circuit Judge had been so energetic and characterized by such newspaper publicity that I decided in favor of a continuance of the exercise of the functions which I believed to be vested in the Senior Circuit Judge by statute and in the performance of my judicial duties, as I understood and conceived them, instead of retiring from the very onerous proceeding and thankless responsibilities, which added a heavy burden indeed, in addition to my administrative work as senior judge of the circuit and my judicial work in the consideration of causes and the preparation of opinions in matters coming before the Circuit Court of Appeals.

As is now fully established, the Supreme Court sustained my construction of the amended Judiciary Act completely, even to the extent of declaring invalid certain rules of the United States District Court, the effect of which was deemed to conflict with certain of the powers conferred upon the Senior Circuit Judge by statute.

At the conclusion of Justice Van Devanter's opinion, in which my jurisdiction and construction of the law was completely sustained, certain observations were made in which it was suggested, in substance, that continuance by me to judicially supervise the duties of the receivers of the Interborough and Manhattan Companies would embarrass the receivership and that such embarrassment might be relieved by my retiring from the supervision and direction of the proceedings. There were then pending before me a number of important issues, all of which I felt it was my duty to dispose of before passing along to the shoulders of another the burden which had weighed so heavily upon my own.

This decision I expressed in my memorandum (D. C.) 4 F. Supp. 68, 74, dated June 28, 1933, in which the following language was used:

"Every judge worthy of judicial office ought to be keenly sensitive to and deeply concerned at any intimation of any action on his part approaching impropriety in the discharge of what always ought to be regarded as a sacred duty. In the present case, I was acting in the performance of my judicial duty according to my conscience and in the belief which I still entertain that I was authorized and called upon by the Act of Congress to do exactly what I did if in my judgment the public interest so required.

"In the light of these profound convictions and with great respect, I cannot for the present bring myself voluntarily to withdraw from this case, whatever may be my ultimate decision. Applications involving vital property rights and interests have been partially argued and are to be further argued which require my study and decision."

Anticipating, however, the carrying out of my plan to retire from the proceedings, which I had in mind in July last, I conferred with a Circuit Judge, one of my associates, explaining to him my intention to retire and my desire to designate him to continue the supervision and direction of the proceedings in these receiverships. The judge expressed, naturally, extreme reluctance to undertake the additional work involved, but agreed as a matter of public interest and judicial service to take over the burden when the issues then pending before me had been determined. One of these issues was an application for the removal of the Receiver Roberts of the Manhattan Railway Company and the appointment of Nathan L. Amster in his stead. Another motion made later was for the appointment of Mr. Amster as coreceiver.

While these and other applications were pending before me, the affidavit of personal bias or prejudice was filed by the same parties who had but recently failed in the United States Supreme Court in the question raised concerning my jurisdiction.

Though my personal preference was, and the inclination of any judge whose fairness was challenged naturally would be, to retire from the proceedings, I felt it my duty to remain, however unpleasant and distasteful, and not to retire simply on the filing of an affidavit held by me to be untimely and insufficient.

Thus in the case of Benedict v. Seiberling (D. C.) 17 F.(2d) 831, 841, District Judge Killits, holding that an affidavit was insufficient, said that it would be improper to withdraw voluntarily because "to allow a disinclination to further sit in this case to work our voluntary retirement would be to permit the authors of this attack * * * to gain

unlawfully that which they are not justly entitled to have."

More recently a motion for leave to file a petition for writs of prohibition and/or mandamus has been filed in the United States Supreme Court by the same litigant. That application is so lacking in merit that I do not deem it necessary to await the determination of the motion.

At the present time, entirely apart from the proceedings mentioned above which disclosed no reason which would permit withdrawal from the case, reasons appear which I deem sufficient to justify the assignment of another judge. The Circuit Court of Appeals in which I preside convenes the first Monday of October. Added to my duties as presiding judge of that court, it is my duty alone as Senior Circuit Judge, a duty from which other Circuit Judges are free, to perform the not inconsiderable administrative work of the Second judicial circuit. The task of supervising these receiverships, added to these other duties, is too onerous to continue another year. For this reason I have decided to withdraw.

While it is within my authority to assign another Circuit Judge in my stead, still I prefer that the assignment be made by the Chief Justice of the United States.

Accordingly, I have advised the assignment of a Circuit Judge to hold a District Court and to hear and determine all issues which may be brought before him in this proceeding, and I have consented that such assignment be made. If reason is necessary to explain the selection of a Circuit Judge rather than a District Judge, it is sufficiently set forth in my opinion of June 28, 1933.