## UNITED STATES v. FUJIMOTO et al.

### Cr. No. 10495.

United States District Court
D. Hawaii.
Nov. 29, 1951.

294

Howard K. Hoddick, Acting U. S. Dist. Atty., Honolulu, T. H., for the United States.

Bouslog & Symonds, Honolulu, T. H., for defendants.

McLAUGHLIN, District Judge.

Five of the seven defendants have filed affidavits against me, charging bias and prejudice. The two who did not file were Dwight James Freeman and Eileen Toshiko Fujimoto.

The indictment charges the seven defendants with conspiring to violate the Smith Act, 18 U.S.C. § 2385, which prohibits the

advocating of the overthrow of the Government of the United States by force or violence.

In 28 U.S.C. § 144 it is provided: "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

"The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, * * *."

### 1. The Disqualification Statute Is Strictly Construed

■ On the threshold, it should be observed that the statute authorizing the disqualification of a judge for alleged bias or prejudice is, despite its remedial nature, strictly construed. Because of the opportunity for abuse of the privilege, rigid compliance with the provisions of the law is exacted. Scott v. Beams, 10 Cir., 1941, 122 F.2d 777, 787–788, certiorari denied, Brody v. Beams, 1942, 315 U.S. 809, 62 S.Ct. 794, 86 L.Ed. 1208; Skirvin v. Mesta, 10 Cir., 1944, 141 F.2d 668, 672; United States v. 16,000 Acres of Land, etc., D.C. Kan., 1942, 49 F.Supp. 645, 648; Burall v. Johnston, D.C.Cal., 53 F.Supp. 126, 128 (1943), affirmed, 9 Cir., 1944, 146 F.2d 230, certiorari denied, 1945, 325 U.S. 887, 65 S.Ct. 1567, 89 L.Ed. 2001.

### 2. To Warrant Disqualification, The Judge's Bias Must Be Entertained Against a Given Defendant Personally.

■ It is well settled in the books and firmly established in this Circuit that, to support an effort to disqualify a judge, the affidavit must allege some "fact indicating that the judge [has] a personal bias or prejudice in favor of one party, or against the other". Loew's Inc. v. Cole, 9 Cir., 1950, 185 F.2d 641, 646, certiorari denied, 1951, 340 U.S. 954, 71 S.Ct. 570, 95 L.Ed. 688; Connelly v. United States District Court, 9 Cir., 191 F.2d 692.

The rationale of the rule is well stated in the leading case of Ex parte N. K. Fairbank Co., D.C.Ala., 1912, 194 F. 978, 989–990:

"If the judge 'lives, moves and has his being' among the people, he must in the course of his life imbibe bias or prejudice in the *popular* sense as to very many persons.

" 'Prejudice or bias,' in the ordinary sense of the term, *and not censurable in its character,* may arise from innumerable conditions in life. A man ordinarily has a bias in favor of the political party to which he belongs, or a prejudice in some degree against its opponents. The same thing is true in a degree as to the church of which he is a member, and he is generally prejudiced or biased more or less about his race, his country, and its institutions. He cannot avoid forming to some extent bias or prejudice regarding men and affairs in nearly every matter as to which he has to inform his judgment or regulate his conduct in the walks of daily life. He must have neighbors, friends, and acquaintances, business and social relations, and be a part of his day and generation. Evidently the ordinary results of such associations and the impressions they create in the mind of the judge are not the 'personal bias or prejudice' to which the statute refers. The impressions, whether favorable or unfavorable, of men, which a judge receives, or his convictions about them * * * in the ordinary walks of life, cannot fall within the evil the statute designs to suppress, unless they are so strong that they result in personal bias or prejudice as to individual suitors, dominating the judge to such an extent that they beget a mental or moral condition which makes the judge willing to do wrong although he sees the right, regarding the justiciable matters brought before him, or else though the judge's intentions be good, render him incapable of rightly seeing the justice of the cause, or impartially enforcing the right involved as between the parties to the suit.

"It is not the proper construction of the Judicial Code to hold that Congress intended that any reason that a litigant may choose to assign in his affidavit, however, absurd or ridiculous in point of law or morals, will disqualify the judge, or render it improper for him to preside in the case." (Emphasis supplied.)

It is worthy of notice that the Fairbank case, supra, was cited with approval by the Supreme Court "as expressing power in the presiding judge to pass upon the sufficiency of the facts affirmed", in Berger v. United States, 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65 L.Ed. 481.

See also Henry v. Speer, 5 Cir., 1913, 201 F. 869, 871–872; Beland v. United States, 5 Cir., 1941, 117 F.2d 958, 960, certiorari denied, 1941, 313 U.S. 585, 61 S.Ct. 1110, 85 L.Ed. 1541, rehearing denied, 1941, 314 U.S. 708, 62 S.Ct. 54, 86 L.Ed. 565; Price v. Johnston, 9 Cir., 1942, 125 F.2d 806, 811–812, certiorari denied, 1942, 316 U.S. 677, 62 S.Ct. 1106, 86. L.Ed. 1750, rehearing denied, 1942, 316 U.S. 712, 62 S.Ct. 1289, 86 L.Ed. 1777; Hurd v. Letts, 80 U.S.App. D.C. 233, 152 F.2d 121, 122; Eisler v. United States, 1948, 83 U.S.App.D.C. 315, 170 F.2d 273, 278, certiorari granted, 1948, 335 U.S. 857, 69 S.Ct. 130, 93 L.Ed. 404, case removed from docket, 1949, 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897, motion to dismiss granted and certiorari dismissed, 1949, 338 U.S. 883, 70 S.Ct. 181, 94 L.Ed. 542; Foster v. Medina, 2 Cir., 1948, 170 F.2d 632, 633, certiorari denied, 1949, 335 U.S. 909, 69 S.Ct. 412, 93 L.Ed. 442; Saunders v. Piggly Wiggly Corporation, D.C.Tenn., 1924, 1 F.2d 582, 584; American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., D.C.N.Y., 1933, 6 F.Supp. 215, 218; United States v. Buck, D.C.Mo., 1938, 23 F.Supp. 508, 509, appeal dismissed, 8 Cir., 1938, 102 F.2d 976; United States v. 16,000 Acres of Land, etc., supra, 49 F.Supp. at page 649; Burall v. Johnston, supra, 53 F.Supp. at page 128.

### 3. Prior Attack Upon the Judge Does Not Carry With It the Legal Presumption That the Judge Will Therefore Be Biased Against the Attacker

■ By means of a unique type of oblique reasoning, the defendants Ariyoshi and Kimoto, in their joint affidavit, allege that, because of certain attacks appearing in the Honolulu Record, of which Ariyoshi is editor, the "Judge would be unable to give defendant Ariyoshi a fair and impartial trial." No act or statement by the judge is alleged to buttress this rank generalization or conclusion. Only a psychic pleader could allege that because a defendant has published uncomplimentary statements concerning a judge, the latter will be unable to give his critic a fair and impartial trial. If such a fantastic procedure were permitted, a defendant could get rid of a judge by the simple expedient of publishing a scurrilous article, *truthfully* alleging that the article was published, and clinching the matter by asserting the bald conclusion that, since the article was uncomplimentary, the judge must of necessity be prejudiced against the publisher!

It is precisely to such bizarre pleading that the admonition in the Fairbank case, supra, applies; namely, that Congress did not intend "that any reason that a litigant may choose to assign in his affidavit, however absurd or ridiculous in point of law or morals, will disqualify the judge".

### 4. A Correct Statement of the Law by the Judge Does Not Support a Charge of Bias or Prejudice

■ The defendant Fujimoto, who, in his affidavit, admits that on October 16, 1948, he became chairman of the Communist Party of Hawaii, complains that in a certain naturalization address from the bench, the judge used the following language:

"The goal of the Communist Party is to seize the powers of government by and for a minority rather than to acquire power through the vote of a free electorate.

\*　　\*　　\*　　\*　　\*　　\*

"Violent and undemocratic means are the calculated and indispensable methods to attain the Communist Party's goal."

The foregoing is a moderate and conservative paraphrase of the law of the land. Section 781(15) of Title 50, U.S.C.A., reads in part as follows: "The Communist movement in the United States is an organiza-

tion numbering thousands of adherents, rigidly and ruthlessly disciplined. Awaiting and seeking to advance a moment when the United States may be so far extended by foreign engagements, so far divided in counsel, or so far in industrial or financial straits, that overthrow of the Government of the United States by force and violence may seem possible of achievement, it seeks converts far and wide by an extensive system of schooling and indoctrination", etc.

The Internal Security Act, of which the foregoing section is a part, was enacted on September 23, 1950. My remarks complained of were given on May 25, 1951, according to Fujimoto's affidavit. As Fujimoto's affidavit itself points out, on that occasion I adopted as my own the words of Mr. Justice Jackson of the Supreme Court,[1] whose statement coincided with Section 781(15), supra. A correct paraphrase of a statutory provision cannot form the basis of a charge of bias or prejudice.

Both Fujimoto and the defendant Hall object to my adopting certain other language by Mr. Justice Jackson in my naturalization talk. No useful purpose would be served by setting forth that language here. Suffice it to say, none of the passages objected to contained the remotest reference or allusion to any person who is now a defendant here, so as to constitute the expression of *personal* bias that the statute demands as a ground for disqualification.

**5.** *Nor Does the Judge's Objection to a Proposed Speaker at a University Dedication Ceremony Constitute Personal Bias Against Any Defendant Herein*

Each of the five defendants seeking my disqualification devotes considerable space in his affidavit to my being "proud of the action of President Sinclair of the University of Hawaii in postponing the dedication ceremonies of the chemistry building in order to prevent Dr. Linus J. Pauling from dedicating the building pursuant to a previous invitation to do so," because of Dr. Pauling's identification with many Communist front organizations. Whatever may be the merits of the controversy to which the defendants refer, it has no bearing whatsoever upon the question of my alleged personal bias or prejudice against any of the defendants herein. There was no reference or allusion by me to any defendant throughout the entire discussion, in the press or elsewhere.

### 6. Conclusion

It is well settled that if the affidavit of bias and prejudice, properly certified by the affiant's counsel, contains allegations of fact that, if true, would disqualify the judge from trying the case, the judge cannot inquire into the truth of the charges, but must forthwith step aside. Berger v. United States, supra, 255 U.S. at pages 33–34, 41 S.Ct. 230.

I have carefully examined all four affidavits, however, and fail to find a single statement of *fact* to the effect that I entertain *personal* bias and prejudice against any defendant. I do not consider the fanciful attempt at mind-reading on the part of Ariyoshi to be a proper allegation of fact, since, as we have seen, it is merely a sweeping generalization concerning my state of mind, buttressed by not a single tangible indication of my alleged bias and prejudice.

Accordingly, I find that the four affidavits are insufficient to cause me to disqualify myself in this case.

1. In the case of American Communications Association v. Douds, 1950, 339 U.S. 382, 425, 429, 70 S.Ct. 674, 94 L.Ed. 925.