UNITED STATES of America
v.
Jim GARRISON, et al.
Crim. No. 71–542.

United States District Court,
E. D. Louisiana,
New Orleans Division.
April 7, 1972.

Gerald J. Gallinghouse, U. S. Atty., New Orleans, La., for plaintiff.

Louis B. Merhige, New Orleans, La., for defendant (movant).

CHRISTENBERRY, District Judge

The subject of this memorandum opinion is a pretrial motion filed by defendant Jim Garrison asking that I recuse myself from sitting on the instant case on the grounds of bias or prejudice. The issue to be resolved is whether recusation is appropriate when the alleged basis for the bias or prejudice is (1) a prior adjudication adverse to defendant Garrison in his official capacity as District Attorney for the Parish of Orleans, State of Louisiana, and (2) a subsequent public denunciation by the defendant of the federal judiciary and this court's decision. For the reasons hereafter assigned, I find that the allegations made by defendant Garrison in his affidavit, taken as the truth, are legally insufficient for recusation and, accordingly, the motion must be denied.

## BACKGROUND

A background sketch of this case will be helpful. On June 30, 1971, Mr. Garrison was arrested and charged by federal agents with the violation of various

federal statutes.[1] On the same day he was released on bail and at present he is on bail awaiting trial. Following his arrest, defendant Garrison waived his right to a preliminary examination on July 8, 1971, and, subsequently, on August 2, 1971, a special federal grand jury began investigating the charges for which the defendant was arrested.

On December 3, 1971, the grand jury, sitting in the Eastern District of Louisiana at New Orleans, returned a true bill indicting Jim Garrison and nine other persons "for conspiracy to obstruct state or local law enforcement." As part of the conspiracy it was alleged that defendant Garrison "would receive protection bribe monies contributed by the defendants who would operate the illegal gambling businesses, to permit these businesses to operate free of any substantial law enforcement interference." (Indictment, paragraph D(1).) As a further part of the alleged conspiracy the indictment states in paragraph D(7) that:

"Pershing Gervais, a former New Orleans Police Officer and former Chief Investigator for the Orleans Parish District Attorney's Office, would receive the protection bribe monies from the principals of the illegal gambling businesses and deliver it to the District Attorney Jim Garrison."

Thirty-five overt acts are then alleged as having been committed in furtherance of the charged conspiracy. Defendant Garrison's name appears in eleven of these alleged overt acts (paragraphs E(7), (17), (20), (23), (24), (26), (28), (29), (31), (32), and (33)) in a context

which alleges specific instances in which he was supposedly a part of a large conspiracy. All defendants in the indictment are accused of violating Title 18 U.S.C.A. § 1511 (Supp.1972), which was a part of the Organized Crime Control Act of 1970 (P.L. 91–452), 84 Stat. 922. This statute, subject to certain limitations, makes it unlawful to engage in a conspiracy to obstruct the enforcement of state law with the intent to facilitate an illegal gambling business. Of course, at this time the court expresses no opinion as to the constitutionality of the statute except to note the presumption of validity that attaches to all legislative enactments.

On the same day as the indictment was returned, December 3, 1971, the case was allotted to the Honorable Lansing L. Mitchell of Section "F" of this court. Judge Mitchell thereupon recused himself because "this case is one which involves parties with whom the Judge of Section 'F' was formerly associated in the practice of law . . . ." On reallotment the case fell to this section of the court. Subsequently, on December 15, 1971, the defendant was arraigned before me at which time he entered a plea of not guilty and was given 60 days within which to file special pleadings. On February 14, 1972, defendant Garrison filed several timely *in limine* motions, one of which seeks recusation of the court.

## AFFIANT'S BASIS FOR RECUSAL MOTION

In accordance with the requirements of Title 28 U.S.C. § 144 (1970),[2] the instant motion was accompanied by de-

---

1. The defendant, when arrested on June 30, 1971, pursuant to the sworn complaint and affidavit of an Internal Revenue Service agent, was charged with violating Title 18 U.S.C.A. §§ 1511, 1955, 1952, 2, 371 (Supp.1972). However, as noted below, the indictment of December 3, 1971, charges that the defendant violated only Title 18 U.S.C.A. § 1511 (Supp.1972).

2. "Section 144. Bias or prejudice of judge
  "Whenever a party to any proceeding in

a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

  "The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning

fendant Garrison's affidavit with allegations to support the motion and a certificate of his local counsel, Louis B. Merhige, stating that the defendant's affidavit was made in good faith. Because it is the focal point of this opinion, the affidavit is set forth in full (except for exhibits):

"Jim Garrison, being first duly sworn, deposes and states as follows:

"This affidavit is presented pursuant to Title 28 U.S.C., Section 144, in order to require that the judge before whom this matter is pending proceed no further, but shall assign this matter to another judge. The reason for this being that the judge to whom this matter has been assigned has a personal bias or prejudice against your affiant. This bias is derived from the following facts:

"In the latter part of 1966, my office received information which convinced me that a conspiracy to kill President John F. Kennedy was formulated in Orleans Parish. With this information in hand, I felt duty bound to conduct an investigation. As a result of this investigation, I ordered the arrest of Clay L. Shaw, for conspiracy, with others, to kill President Kennedy.

"Because of the seriousness of the charge, I asked that a preliminary hearing be held in the case. This hearing resulted in all three State judges unanimously finding probable cause to bind the defendant over for trial. Still mindful of the awesome gravity of the charge, I presented the state's evidence to the Orleans Parish grand jury. After hearing the evidence, the grand jury returned an indictment against Shaw. This indictment, after much delay occasioned by defense pleadings, was finally tried. On March 1, 1969, the petit jury acquitted the defendant.

"A review of the testimony in the case convinced me that Shaw had committed perjury. Consequently, a bill of information was filed against him for violating the state's perjury statute. As in the conspiracy case, the defendant sought refuge in the federal court. Shaw sought an injunction preventing the state from proceeding with its perjury case, citing claimed prosecutorial bad faith as his grounds for relief.

"An evidentiary hearing was held on his complaint by this honorable court. I, members of my staff and certain state and defense witnesses on the conspiracy trial were heard. On May 27, 1971, the court rendered its decision granting the relief sought. In the course of its opinion, a copy of which is attached hereto as exhibit 'A' and made a part of this affidavit, the court launched a personal attack upon me. The opinion stated that I wrongfully used certain esoteric methods to 'implant' an otherwise untrue story in the mind of a state witness, that our prosecution was conducted in bad faith and that my sole interest in the case was financial. These conclusions, in my judgment, were totally unsupported by any evidence adduced at the hearing nor were they supportable by any form of objective reasoning.

"Feeling strongly in the matter, I caused to be issued a press release denouncing your honor's findings. A copy of this press release is annexed hereto as exhibit 'B' and made a part of this affidavit.

"Given the personal character of the court's remarks in its opinion and my equally personal remarks in my press release, it is submitted that this court cannot sit in fair judgment of me. The bias of the court, conscious or otherwise, is patent.

"/s/ Jim Garrison"

of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith."

The case alluded to by Mr. Garrison, the affiant, is Shaw v. Garrison, 328 F. Supp. 390 (E.D.La.1971), appeal docketed, No. 71–2422, 5th Cir., July 30, 1971. As defendant states, it is this decision, rendered in the normal course of the performance of this court's judicial duties, that forms his first basis for recusal. As a second ground, Mr. Garrison asks that I recuse myself because he "issued a press release denouncing [my] findings."

■■ Defendant Garrison's press release, which he candidly admits to having authored, represents certainly an unusual statement for an attorney to have transmitted to the media. Attorneys traditionally, occasionally pursuant to a judicial admonition, try their law suits in courts of law and not the market place. To do otherwise can be a serious reflection on a counselor's sense of propriety and, of course, can result in a finding of contempt of court. In this instance, however, nothing has transpired which would affect this court's ability to accord all litigants a fair and impartial trial. Were there any reason, apparent or otherwise, why this court could not feel assured that justice would be applied evenhandedly, then on its own volition the court would recuse itself. Affiant's contention reduces itself to the proposition that he can avoid being tried before any particular judge if he has publicly voiced disapproval of that judge or that judge's work. All the more so, affiant contends, if that judge has previously decided a case adverse to the defendant. That simply is not the law and the idea of it is counter to this court's policy against allowing a defendant to select the judge who will preside over his trial. The policy rather is that all cases should be allotted on a random basis. It should never be of any moment to a judge as to whether or not he sits on a particular case. "The court is not a party. There is nothing that affects the judges in their own persons. Their concern is only that the law should be obeyed and enforced, and their interest is no other than that they represent in

every case." United States v. Shipp, 203 U.S. 563, 574, 27 S.Ct. 165, 167, 51 L.Ed. 319, 324 (1906) (Holmes, J.). Similarly, a litigant's case must stand on its own merits and not depend on being heard by any particular judge.

## THE APPLICABLE LAW

■ In passing upon a motion to recuse on the grounds of bias or prejudice the facts alleged in the affidavit are taken as true, Berger v. United States, .255 .U.S. 22, 33–35, 41 S.Ct. 230, ·233, 65 L.Ed. 481, 485 (1921), and the judge to whom the motion is presented determines only the legal sufficiency and timeliness of the affidavit and the certificate of counsel. Berger, supra, 255 U.S. at 33, 36, 41 S.Ct. at 233, 234, 65 L. Ed. at 485, 486; Albert v. United States District Court, for Western District of Michigan, 283 F.2d 61, 62 (6th Cir. 1960), cert. denied, 365 U.S. 828, 81 S.Ct. 713, 5 L.Ed.2d 706 (1961). Where the affidavit and certificate pass the dual tests of sufficiency and timeliness the motion to recuse must be granted though the judge knows for a certainty that the allegations of prejudice and bias are false. Morse v. Lewis, 54 F.2d 1027, 1031 (4th Cir.), cert. denied, 286 U.S. 557, 52 S.Ct. 640, 76 L.Ed. 1291 (1932). The affidavit, however, is strictly construed against the affiant, for a judge is presumed to be impartial. Beland v. United States, 117 F.2d 958, 960 (5th Cir.), cert. denied, 313 U.S. 585, 61 S.Ct. 1110, 85 L.Ed. 1541 (1941).

■ The affidavit and certificate of counsel were timely filed on February 14, 1972, within the delay permitted by this court for the filing of special pleadings. The sufficiency of the affidavit, however, is quite another matter. Section 144 requires a "sufficient affidavit that the judge before whom the matter is pending has a *personal* bias or prejudice . . . ." (Emphasis added.) Personal bias is defined as an attitude of extrajudicial origin. United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778, 793 (1966). Neither prior judicial exposure to a de-

fendant nor prior judicial rulings adverse to a defendant constitute bias or prejudice on the part of the judge sufficient to cause his recusal. Barry v. Sigler, 373 F.2d 835, 836 (8th Cir. 1967); Lyons v. United States, 325 F.2d 370, 376 (9th Cir. 1963), cert. denied, 377 U.S. 969, 84 S.Ct. 1650, 12 L.Ed.2d 738 (1964). Counsel for defendant conceded the correctness of the aforestated principle when he stated in his memorandum in support of the motion: "Mover recognizes that the great weight of authority is against a successful recusation motion where the alleged bias or prejudice of a judge is not shown to stem from extrajudicial origins." Memorandum for defendant at 1. It follows then that Garrison's allegation of bias or prejudice founded upon the opinion in Shaw v. Garrison, *supra*, is insufficient as a matter of law.

■ Movant's second ground alleged to support the motion for recusal —his own press release denouncing the federal judiciary and this court's opinion in the *Shaw* case—is similarly inadequate. It is well settled that prior written attacks upon a judge are legally insufficient to support a charge of bias or prejudice on the part of the judge toward the author of such a statement. *In re* Union Leader Corp., 292 F.2d 381, 389 (1st Cir.), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961), noted in 8 Utah L.Rev. 75 (1962); United States v. Fujimoto, 101 F.Supp. 293, 296 (D.Hawaii 1951), motion for leave to file petition for writ of prohibition or mandamus denied, Fujimoto v. Wiig, 344 U.S. 852, 73 S.Ct. 102, 97 L.Ed. 662 (1952).

The reasoning behind these decisions is not difficult to ascertain. As one jurist in a similar case stated:

"Only a psychic pleader could allege that because a defendant has published uncomplimentary statements concerning a judge, the latter will be unable to give his critic a fair and impartial trial. If such a fantastic procedure were permitted, a defendant could get rid of a judge by the simple expedient of publishing a scurrilous article, *truthfully* alleging that the article was published, and clinching the matter by asserting the bald conclusion that, since the article was uncomplimentary, the judge must of necessity be prejudiced against the publisher!"

United States v. Fujimoto, *supra*, 101 F.Supp. at 296. The mere fact that a defendant has made derogatory remarks about a judge is insufficient to convince a sane and reasonable mind that the attacked judge is biased or prejudiced, the standard used to test the sufficiency of an affidavit for recusal under section 144. Berger v. United States, *supra*, 255 U.S. at 33–35, 41 S.Ct. at 233, 65 L. Ed. at 485; United States v. Hoffa, 245 F.Supp. 772, 778 (E.D.Tenn.1965). To allow prior derogatory remarks about a judge to cause the latter's compulsory recusal would enable any defendant to cause the recusal of any judge merely by making disparaging statements about him. Such a bizarre result clearly is not contemplated in section 144.

■ The denial of a motion to recuse under these circumstances is in accord with the oft-stated principle that courts should not only be fair and impartial but should also appear to be fair and impartial. Indeed, the majority of circuit courts hold that it is the duty of a judge not to recuse himself where the statutory standards are not met. United States v. Anderson, 433 F.2d 856, 860 (8th Cir. 1970); Wolfson v. Palmieri, 396 F.2d 121, 124 (2d Cir. 1968); Tynan v. United States, 126 U.S.App.D.C. 206, 376 F.2d 761, 765 (D.C.Cir.), cert. denied, 389 U.S. 845, 88 S.Ct. 95, 19 L. Ed.2d 111 (1967); Simmons v. United States, 302 F.2d 71, 75 (3d Cir. 1962); *In re* Union Leader Corp., 292 F.2d 381, 391 (1st Cir.), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961); Tucker v. Kerner, 186 F.2d 79, 85 (7th Cir. 1950); Orfield, *Recusation of Federal Judges*, 17 Buff.L.Rev. 799, 822 (1968).

While the Fifth Circuit has not considered the precise question presented

by this motion, the indications are that it would follow the great weight of authority which favors the "duty," rather than a "discretion," approach to recusal when the affidavit is legally insufficient to mandate the recusal of the judge. *See* Edwards v. United States, 334 F.2d 360, 362 n.2 (5th Cir. 1964), cert. denied, 379 U.S. 1000, 85 S.Ct. 721, 13 L. Ed.2d 702 (1965). In addition, there is a strong precedent in this District for the denial of the instant motion inasmuch as affiant's affidavit is legally insufficient. United States v. Partin, 312 F.Supp. 1355, 1360 (E.D.La.) (West, C. J.), appeal dismissed, 432 F.2d 556 (5th Cir. 1970).

Having found the reasons given in the recusal affidavit to lack the requisite legal sufficiency, the motion of defendant Jim Garrison for the recusal of this court must be and it is denied. It is so ordered.