In the Matter of **UNION LEADER COR-PORATION, Petitioner,**

No. 5820 (Original)

United States Court of Appeals
First Circuit.
June 27, 1961.

Motion for Stay Denied July 13, 1961.

382

Ralph Warren Sullivan, Boston, Mass., with whom James M. Malloy and Morton Myerson, Boston, Mass., were on memorandum, for petitioner.

Robert H. Goldman, Lowell, Mass., with whom Frank Goldman, Lowell,

Mass., Joseph F. Bacigalupo, Lawrence, Mass., and John J. Ryan, Jr., Haverhill, Mass., were on brief, for The Haverhill Gazette Co., intervenor.

Before HARTIGAN and ALDRICH, Circuit Judges, and GIGNOUX, District Judge.

ALDRICH, Circuit Judge.

This is a petition for a writ of mandamus to order a judge of the United States District Court for the District of Massachusetts to revoke his action striking an affidavit of bias and prejudice filed pursuant to 28 U.S.C. § 144 and to order him to disqualify himself from conducting further proceedings in the case of Union Leader Corporation v. Newspapers of New England, Inc. (Haverhill Gazette Company v. Union Leader Corporation), recently before this court on liability, 1 Cir., 1960, 284 F.2d 582, certiorari denied, 365 U.S. 833, 81 S.Ct. 747, now pending in the district court for a determination of damages suffered by Gazette. It is asserted that we have authority to act under the All Writs Act, 28 U.S.C. § 1651(a).[1]

■ We have been traditionally reluctant to permit mandamus to be used as a means of circumventing the policy against intermediate review. See, e. g., In re Josephson, 1 Cir., 1954, 218 F.2d 174, 177. It now seems clear, however, that in In re Josephson we construed the words "in aid of * * * jurisdictions" too narrowly. See LaBuy v. Howes Leather Co., 1957, 352 U.S. 249, 255, 77 S.Ct. 309, 1 L.Ed.2d 290; Black v. Boyd, 6 Cir., 1957, 248 F.2d 156, 160–161. In a sense this may merely mean that the emphasis was placed at the wrong point. Our jurisdiction exists, but we must decide whether there are sufficient reasons for its exercise. In Roche v. Evaporated Milk Ass'n, 1943, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185, for example, the court explicitly stated that the question was "not whether the court below had power to grant the writ but whether in the light of all the circumstances the case was an appropriate one for the exercise of that power." 319 U.S. at pages 25–26, 63 S. Ct. at page 941. Although it referred to our power as a matter of "sound discretion," 319 U.S. at page 25, 63 S.Ct. at page 941, that case made very clear, by its firm reversal of the decision to issue the writ, that appellate courts must be sure of their grounds. As the court cautioned in LaBuy v. Howes Leather Co., supra, where the power was characterized in broad terms, "mandamus should be resorted to only in extreme cases." 352 U. S. at pages 257–258, 77 S.Ct. at page 314. In short, it is a power to be exercised "sparingly." Prater v. Boyd, 6 Cir., 1959, 263 F.2d 788, 790. But this is not to say that the sometimes confused distinction between jurisdiction and the proper exercise of it is wholly illusory. For, in addition to more traditional bases for issuing an extraordinary writ, if we properly find "exceptional circumstances," LaBuy, supra, 352 U.S. at page 260, 77 S.Ct. at page 315, or more loosely, and perhaps more practically, that a writ should issue "in the interest of justice," Ford Motor Co. v. Bisanz Bros., Inc., 8 Cir., 1957, 249 F.2d 22, 26; cf. United States v. Beatty, 1914, 232 U.S. 463, 467, 34 S.Ct. 392, 58 L.Ed. 686 ("furthering justice"), our power to hear the case in a mandamus proceeding is unquestioned.

■ Initially, we dismiss arguments based upon a claim that a judge against whom a sufficient affidavit of prejudice has been filed ceases to have power to act. Lack of jurisdiction in the district court is a classic example calling for exercise of the writ, Ex parte Republic of Peru, 1943, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014; Ex parte Indiana Transp. Co., 1917, 244 U.S. 456, 37 S.Ct. 717, 61 L.Ed. 1253; see Roche v. Evaporated Milk Ass'n, supra, 319 U.S. at page 26, 63 S.Ct. at page 941, but this use of

---

1. "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

the writ is usually reserved for those cases where the absence of jurisdiction is plain. See Ex parte Muir, 1921, 254 U.S. 522, 534, 41 S.Ct. 185, 65 L.Ed. 383; Massey-Harris-Ferguson, Ltd. v. Boyd, 6 Cir., 1957, 242 F.2d 800, 803, certiorari denied, 355 U.S. 806, 78 S.Ct. 48, 2 L.Ed. 2d 50.[2] The very fact that the judge has power to decide whether the affidavit is sufficient or not, Berger v. United States, 1921, 255 U.S. 22, 36, 41 S.Ct. 230, 65 L.Ed. 481, makes this justification for exercising jurisdiction inapplicable. Likewise, we cannot accept the argument that, absent mandamus, a lengthy trial may ensue for nought. This argument would apply to every interlocutory ruling which might affect the outcome of a case. It has been repeatedly rejected. See, e. g., Roche v. Evaporated Milk Ass'n, supra, 319 U.S. at page 30, 63 S.Ct. at page 943.

■ But we do find exceptional circumstances in the nature of the particular claim advanced by petitioner. A trial taking place before a judge alleged to be personally biased, particularly when the claimed bias has apparently become a matter of public notice and interest, may be incompatible with the proper administration of justice. If the claim is sufficiently meritorious, the proceeding should be aborted rather than corrected. Mandamus has been held to be an appropriate remedy to secure the right to jury trial, at least where the right is clear, Beacon Theatres, Inc. v. Westover, 1959, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed. 2d 988; Ex parte Simons, 1918, 247 U.S. 231, 38 S.Ct. 497, 62 L.Ed. 1094, and seemingly even where the right is debatable, *compare* majority opinion *with* dissenting opinion in Beacon Theatres, Inc. v. Westover, supra, both at page 511 of 359 U.S., at page 957 of 79 S.Ct. From the general standpoint of "the interest of justice," the right to be tried before an unbiased judge is also basic in our judicial system. Although there are differences of opinion, we agree with the concurring judges in Green v. Murphy, 3 Cir., 1958, 259 F.2d 591, 595, that public confidence in the courts may require that such a question be disposed of at the earliest opportunity.[3] In addition to the cases cited therein, see also United States v. Ritter, 10 Cir., 1959, 273 F.2d 30, 32, certiorari denied, 362 U.S. 946, 950, 80 S.Ct. 863, 4 L.Ed.2d 869. This need not commit us to entertaining every rejected affidavit of prejudice; nor need we presently set forth the limits. It is to be borne in mind that mandamus is a discretionary writ.

Strictly, the district judge is the respondent in such mandamus proceedings, but with his assent, and in accordance with our customary practice, we have permitted intervenor Gazette to file an answer instead.[4] We deal initially with its contention that the certificate of counsel accompanying the affidavit should

---

2. Nothing we said in In re United States, 1 Cir., 1961, 286 F.2d 556, 562, certiorari granted sub nom. Fong-Foo v. United States, 81 S.Ct. 1916, was intended to mean that this was the only basis of mandamus jurisdiction.

3. We also subscribe to the statement in Judge Hastie's opinion that it may sometimes be an unhappy situation for a district judge to conduct a trial while an affidavit of prejudice is pending, but we do not regard that in itself as a basis for mandamus. If a judge is in fact embarrassed he can certify the case for an interlocutory appeal under 28 U.S.C. § 1292(b), or voluntarily recuse himself even though he regards the affidavit as insufficient.

4. Petitioner argues that the fact that intervenor is appearing here shows its belief that the judge is prejudiced in its favor—else, why should it care whether he is disqualified or not? Because this argument may have at least a superficial appeal, we might, in the future, reconsider our practice if a situation arose where an affidavit was filed against a judge before any proceedings had taken place. But where a case, and particularly an antitrust case, has already been tried at length on the merits, the issue of damages, although separate in a sense, is necessarily tied into matters already heard. Resumption before the same judge would undoubtedly be a simpler, shorter and less costly procedure than it would be to recommence with a new one. Intervenor accordingly has an immediate and legitimate interest to protect.

have stated that counsel was acting in good faith, not that affiant was. The statute requires "a certificate of counsel of record stating that it is made in good faith." The question is what, or who, the word "it" refers to. While some courts have assumed that the statute was aimed merely at counsel's opinion that his client was acting in good faith,[5] all agree that the affidavit has indispensable value. See Berger v. United States, 1921, 255 U.S. 22, 33, 41 S.Ct. 230, 65 L.Ed. 481; Beland v. United States, 5 Cir., 1941, 117 F.2d 958, 960, certiorari denied, 313 U.S. 585, 61 S.Ct. 1110, 85 L.Ed. 1541; Currin v. Nourse, 8 Cir., 1934, 74 F.2d 273, 275, certiorari denied, 294 U.S. 729, 55 S.Ct. 638, 79 L.Ed. 1259; Morse v. Lewis, 4 Cir., 1932, 54 F.2d 1027, 1032, certiorari denied, 286 U.S. 557, 52 S.Ct. 640, 76 L.Ed. 1291; United States v. Gilboy, D.C.M.D.Pa.1958, 162 F.Supp. 384, 391, petition for writ of mandamus denied sub. nom. Green v. Murphy, 3 Cir., 1958, 259 F.2d 591. One may well question the value of counsel's opinion of what is in his client's mind, and we certainly must disagree with Flegenheimer v. United States, 3 Cir., 1936, 110 F.2d 379, 381, that it is a client's "right" to have counsel's certification when counsel believes the affidavit's recitation to be false.[6] If a certificate is to serve the purpose of shielding a court which cannot test the truth of claimed facts, it should at least carry the assertion that counsel believes the facts alleged to be accurate and correct.

Beyond this, there is the element of legal sufficiency. It would seem meaningless to ask a lawyer to certify that his client believed an affidavit to be legally sufficient while thinking it frivolous himself. Federal Rule of Civil Procedure 11, 28 U.S.C., states that counsel, in filing a pleading, impliedly certifies "that to the best of his knowledge, information, and belief there is good ground to support it." See also Rule 56(g). The disqualification of a judge scarcely merits a lower standard. See United States v. Gilboy, supra, 162 F.Supp. at page 392; Denis v. Perfect Parts, Inc., D.C.D.Mass.1956, 142 F.Supp. 263, 264; United States v. Lattimore, D.C.D.C.1954, 125 F.Supp. 295, 296. We interpret "it" in the statute as referring to the application as a whole, and hold that counsel's good faith must be stated.[7] We intimated that this was our view in Craven v. United States, 1 Cir., 1927, 22 F.2d 605, 607, certiorari denied 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739, but we have never actually decided this question and other circuits have seemingly adopted a contrary rule. See footnote 5, supra. For these reasons, and because the court below did not reject the affidavit on this ground, we think it would be unfair to announce our interpretation now other than prospectively. We pass, therefore, to the merits.

In an editorial printed in 1950 petitioner, a publisher of a daily newspaper in Manchester, New Hampshire, criticized a group of prominent Bostonians for the position they were taking on Far Eastern affairs, charging that they were

---

5. The court in Flegenheimer v. United States, 3 Cir., 1936, 110 F.2d 379, assumed that this, or something even less perfunctory, was all that the statute called for. Cf. Nations v. United States, 8 Cir., 1926, 14 F.2d 507, certiorari denied 273 U.S. 735, 47 S.Ct. 243, 71 L.Ed. 866 (without discussion, certification of affiant's good faith accepted as sufficient).

6. We believe we are supported in this by those cases in which the certification requirement was not permitted to be obviated by an affiant's claiming to represent himself on this issue. See, e. g.,

Mitchell v. United States, 10 Cir., 1942, 126 F.2d 550, 552, certiorari denied, 316 U.S. 702, 62 S.Ct. 1307, 86 L.Ed. 1771.

7. What legislative history there is supports our conclusion. The act as originally drawn required "a certificate of counsel of record that *such affidavit and application* are made in good faith." 36 Stat. 1090. (Ital. suppl.) The codifier's note to the revision, 62 Stat. 898, explained two other alterations to the section, and concluded that "changes were made in phraseology and arrangement" without commenting on the particular change here involved.

misguidedly playing into the hands of the Russians. Respondent judge was one of a dozen individuals named. At some other time, the date and circumstances not appearing, petitioner criticized the judge for some apparent public position on the subject of Alger Hiss. In December 1956, on its editorial page, petitioner published a criticism of Harvard University, and notably of the judge as president of its Board of Overseers, in connection with the selection as a lecturer of one Oppenheimer, who had had difficulties with the federal government. This was followed by a front-page editorial on the same subject, prominently mentioning the judge, in February 1957, and by an inside editorial two months later. On January 13, 1959, the complaint was filed in petitioner's action and forthwith drawn to the judge in accordance with local practice. On March 5, 1959, at the first hearing, the judge made the following statement:

"I feel I am bound now to make a comment which may be wrong. I know nothing whatsoever about any of these parties. In my naivete I didn't know until now that the Haverhill Journal had some relationship to a Manchester newspaper. I do not read the Manchester Press. And although no one will believe it, I am not the slightest bit affected by editorials for or against me, but I know there has been some Manchester newspaper which has been in the business of attacking me from time to time, and I don't know whether it is the plaintiff or not. I am quite immune from any bias with respect to it because I don't even read this stuff, but I think I ought to say to you that I know that somebody has been doing it, and maybe it is this plaintiff. If this plaintiff regards me as in any way biased, I wish the plaintiff would say so."

Petitioner's affidavit states:

"On advice of counsel, plaintiff Corporation did not ask the Court to disqualify himself despite the fact that the Court mentioned *editorials* which had not been previously discussed before him, despite the fact that there has only been one newspaper in Manchester for many years and despite the fact that plaintiff Corporation was not in the *business* of attacking anyone." (Ital. in original).

Pausing here, we assume that all of petitioner's publications were within the scope of fair comment upon matters of public interest. Whether they could also be construed as attacks upon the judge is another matter. Petitioner denies that they were. At the same time, petitioner was fully informed at the outset that the judge construed them as attacks, and felt that petitioner was "in the business" of attacking him, and if it believed this to be a form of hypersensitivity on his part, or a ground for disqualification, it had fair notice and full opportunity then to extricate itself.

Thereafter the case was tried to the court. On December 28, 1959, the court made detailed findings of fact and conclusions of law and filed a lengthy opinion, deciding, as related in our earlier opinion, that petitioner had violated the act, and, because of what we considered a too restrictive view of the law, that intervenor had as well. In October 1960, shortly after the cross-appeals had been argued, but before decision, petitioner criticized the judge in a front-page editorial for having written a letter to the then governor of Massachusetts complaining of the governor's delay in filing certain judicial vacancies. On the inside page the editorial reviewed all of the previously mentioned matters for which petitioner had earlier criticized the judge, and concluded with an expression of petitioner's opinion that a judge should hold himself aloof from all public controversy that did not come before him in the course of his official duties. This was exactly the same sort of "attack" as those to which the judge made reference on March 5, 1959, but more vigorous, being a black-print editorial, in a form which petitioner expressly stated therein

might be regarded by the judge as "unduly harsh." [8]

On December 2, 1960, we handed down our opinion setting aside the portion of the decision below that had been in favor of petitioner, and affirming that which was against it. On December 20, 1960, petitioner published an item concerning a land-taking settlement made by the judge in 1951 on behalf of himself and his family with the Commonwealth of Massachusetts when one Callahan was Commissioner of Public Works. Petitioner says this item was "timely and newsworthy" because of a currently publicized probation hearing before the judge in the matter of one Worcester in which "many news stories speculated that Mr. Callahan was the true protagonist." It says that this exclusive story connecting the judge with Callahan was for the purpose of giving petitioner "added prestige and recognition." We have some doubts whether an account of this nine-year-old settlement had any news value except for the fact that publication of itself carried the implication that there was something significant about it.[9] We are reminded of the story of the mate who wrote in the ship's log, "Captain sober today." The mate's explanation that it was the truth did not destroy the overtones or innuendoes. Petitioner stoutly maintains that there was no imputation here. We disagree. Subsequent events do not prove otherwise. The fact that other newspapers repeated the account, and Callahan himself sought to make use of it, does not establish that it would have had any importance if it had not been launched by petitioner in a setting of impropriety.

The judge immediately released a detailed account of the settlement, which he filed as an exhibit in United States v. Worcester, D.C.D.Mass.1961, 190 F.Supp. 548.[10] At eight o'clock the next morning petitioner's reporter, one Price, telephoned the judge at his home, "so that I could write a follow-up story." The judge told him petitioner's article was libelous, but refused to give any further "follow-up." Not content with this, Price pursued the judge to his chambers in the Federal Building, hoping that that "might be more productive." His hopes were realized to the extent that the judge, on being asked whether he had any comment, stated that petitioner's actions were "contemptible."[11] This, too, petitioner printed. Thereafter it published something on the 1951 land settlement, some times at length, every day for ten days.[12] In January petitioner had Price prepared in affidavit form an account of his conversations with the judge, which it retained "in case . . . a contingency arose." By this last, obviously, it meant if it should later conclude to file an affidavit of prejudice.

On March 14, 1961, the court held a hearing on a motion filed by intervenor to enjoin petitioner from encumbering its property so as to reduce its ability to pay damages. Intervenor presented its position, certain comments were made by

---

8. We note also that repetition of the earlier criticisms of events long past may have been evidence of malice, cf. Conroy v. Fall River Herald News Pub. Co., 1940, 306 Mass. 488, 492–494, 28 N.E.2d 729, 132 A.L.R. 927, even if the accounts were originally privileged, cf. Thompson v. Globe Newspaper Co., 1932, 279 Mass. 176, 190, 181 N.E. 249.

9. Possibly to prevent its readers from failing to assume that there was more behind the story making it important news, petitioner added that the law had been changed "since that time" so that such settlement had to receive court approval.

10. Curiously, petitioner twice insisted during oral argument that the content of the judge's statement was "totally irrelevant" to the Worcester case. We cannot reconcile this with its contention that the Worcester case made its own article of great public interest and "entirely relevant."

11. Whether the word was used in its technical sense did not appear, but petitioner has stated that this doubt was resolved by the judge's use of the word "contempt" on March 14, 1961, and we will accept its construction.

12. "State Paid [Judge's] Heirs at Higher Rate," "Controversial Property," etc.

the court and petitioner made an argument on the merits. Following this, petitioner stated that it intended to file an affidavit of prejudice. The judge replied as follows.

"There is no reason whatsoever. It is true that your client has been in the business of attacking me, but I haven't attacked your client. And I regard his misconduct as giving no basis for alleging misconduct on my part."

Counsel for petitioner. "Well—"

The Court. "I am going to be quite severe about that because I think that there is nothing more reprehensible than a person, who is a litigant before a Court, trying to disqualify a judge by the litigant's misconduct. It is indeed a contempt of which this Court has chosen so far to take no action. I hope that is entirely clear."

Counsel for petitioner. "Yes, your Honor, it is entirely clear, and we intend to take such steps to protect our client as we can."

The Court. "And I hope in connection with that you will choose to include in your document all the attacks which your client has chosen to place in the. press as a means of trying to create a prejudice not on my part but with respect to the case."

■ The promised affidavit was filed on March 20, and immediately ordered struck. In a memorandum accompanying its order the court declared the affidavit untimely and insufficient. On April 26 there occurred one final incident, called to our attention by petitioner's filing a transcript of certain proceedings in another, unrelated, antitrust case. While the statute permits the filing of only one affidavit,[13] to the extent that this further material may indicate the judge's state of mind regarding the events set forth in the present affidavit we think we may properly consider it. See Los Angeles Trust Deed & Mortgage Exchange v. S.E.C., 9 Cir., 1960, 285 F.2d 162, 173. In this unrelated case the judge, in preparing to disqualify himself *sua sponte* therein, made a lengthy review of cases in which he had done so before. Then, apparently to distinguish those cases from the case at bar where he was not doing so, he reviewed the situation here at some length, stating that he did not feel any prejudice, and that he believed, as of course he had already ruled, that the affidavit was insufficient. He concluded his reasons with the following.

"Moreover, it rather surprises me that a person has any status at the end of the first half of the game to suggest that the referee, who was qualified at the beginning, is disqualified at the middle because in the meantime the player has been cursing the referee outside of court."

■ As a prelude to taking up the sufficiency of the affidavit, we note that neutrality in the absolute sense cannot be expected. "Personal bias or prejudice" calls only for practical objectives. For example, prior judicial views will not disqualify. See, e. g., Denis v. Perfect Parts, Inc., D.C.D.Mass.1956, 142 F.Supp. 259. That case, alleging patent infringement, was drawn to the same judge who had previously upheld the patent's validity and found it infringed. Doubtless it was not unreasonable for the second defendant to feel his chances of success were lessened because of this circumstance. Yet it would be strange if a judge became less qualified the greater his judicial experience. Obviously, too, a judge is not prevented from sitting because he comes into every case with a background of general personal experiences and beliefs. In re J. P. Linahan, Inc., 2 Cir., 1943, 138 F.2d 650; see Ex parte N. K. Fairbank Co., D.C.M.D.Ala. 1912, 194 F. 978, 989. There must be something unique. Nor will a judge's

---

13. This scope of the provision has never been determined. Whether it would forbid a second affidavit for entirely new matter occurring after the first, we need not decide.

ordinary and natural reactions to the conduct of, or evidence developed about, a party in a case before him create a disqualification. Craven v. United States, supra. In the course of a criminal trial, for example, evidence as to a defendant's activities may incite natural disgust. Yet it could hardly be thought that a judge became disqualified because he reacted as would anyone else.

In sum, a judge must be presumed to be qualified, and there must be a substantial burden upon the affiant to show grounds for believing the contrary. This is not an undue requirement. If a party cannot present a sufficient affidavit indicating possible bias, he will still have protection if bias or prejudice appear in fact during the course of the trial. Compare Knapp v. Kinsey, 6 Cir., 1956, 232 F.2d 458, with Killilea v. United States, 1 Cir., 1961, 287 F.2d 212, certiorari denied 81 S.Ct. 1933.

■ Theoretically there are two levels to the claim of bias presented by the affidavit herein: (1) The fact alone that the judge was "attacked." (2) The judge's response to the attacks. We could not find the first sufficient. A judge lives in an atmosphere of strife, in which, by nature and experience, he is expected to be a man of "fortitude." See Pennekamp v. State of Florida, 1946, 328 U.S. 331, 349, 66 S.Ct. 1029, 90 L.Ed. 1295. He must continually rule against one party or another. No judge can be so sanguine as to believe that he is never the object of disapproval and criticism directed to something more personal than his abstract judicial actions. If such disapproval is brought openly to his attention he does not automatically change from benign to biased. It is neither practical nor reasonable to liken a judge to an ostrich, unconcerned so long as his head is in the sand.

It is true that in the case at bar the judge was "attacked" for matters unconnected with the case. But this fact seems relevant only if it could be said that a judge was more likely to be personally affected by one type of charge than by another. In Keown v. Hughes, 1 Cir., 1920, 265 F. 572, 577–578, the court rejected summarily the suggestion that a judge became prejudiced when a party filed an abusive and irrelevant affidavit casting reflections both on the judge and on his father. See also United States v. Fujimoto, D.C.D.Haw.1951, 101 F.Supp. 293, 296 (newspaper attack on judge); Allen v. DuPont, D.C.D.Del.1948, 75 F.Supp. 546, 548 (party brought suit against judge personally). We have found no case which suggests that an affidavit must be ruled to be sufficient simply because it might be natural for a judge to have resented something said about him. It is conceivable that an attack could be so vicious that we would have to presume that the judge had been affected, but, as the cases immediately supra indicate, that situation will be rare. It is not here.[14]

■ The second possible level of petitioner's claim, and the one on which we understand it to rely, is not that an attack on a judge per se disqualifies him, but that in this case the judge's conduct "fair[ly] supports" (see Berger v. United States, 1921, 255 U.S. 22, 33, 41 S.Ct. 230, 65 L.Ed. 481), its conclusion that bias exists. This is the common, and proper, method of proof. Cf. Moskun v. United States, 6 Cir., 1944, 143 F.2d 129. Petitioner first points to the judge's

---

14. This decision makes it unnecessary for us to attempt to reconcile the conflict which could be created between two important policies: one dictating that a judge who may be biased should not sit, and one requiring that a party be discouraged from attacking a judge during the progress of a suit and thereby obtaining his own deliverance from a trial that is not going well, or from a judge who is not sufficiently favorable to him. As to this last, although petitioner urges its petition entirely on the high plane of protecting the dignity and decorum of the courts, we cannot overlook the circumstance that after the date that petitioner first found him acceptable the judge has resolved many, if not all, disputed question of fact in its disfavor. It is not inconceivable that in petitioner's eyes this is his principal sin.

statement on March 14 that petitioner is "in the business of attacking me." The obvious answer to this is that if petitioner did not find the judge disqualified in 1959 for that belief, he did not become so in 1961 because he continued to be of the same opinion. Nothing is more important in an affidavit than timeliness, and its counterpart, waiver. See In re United Shoe Machinery Corp., 1 Cir., 1960, 276 F.2d 77, 79; Eisler v. United States, 1948, 83 U.S.App.D.C. 315, 170 F.2d 273, 277, appeal dismissed, 338 U.S. 883, 70 S.Ct. 181, 94 L.Ed. 542. The statute does not permit second guessing.

Next, petitioner correctly says that the judge expressed the opinion that petitioner was seeking to create grounds to disqualify him. This was a serious charge of misconduct. The judge himself described it as contempt, for which "so far" he had chosen to take no steps. During oral argument petitioner conceded that if it had published these articles for the purpose of disqualifying the judge, it would have constituted contempt.[15] Petitioner denies, of course, that that was its purpose. Whether the judge was correct in his conclusion is a question of fact. Petitioner may have had other motives. But we could not label the judge's view unwarranted. Even assuming that petitioner's article of December 20, whether or not libelous, was highly newsworthy, the conduct of Price, described as one of petitioner's "best reporters," was far and above the ordinary call of duty. Doubtless judges are no more immune from domestic interruption than anyone alse, but having talked with the judge at his home and received his comment, something obviously to petitioner's liking if it was seeking grounds to disqualify him, why was the judge then pursued to his chambers? Petitioner supplies the answer—to see if something "more productive" could be obtained. If the judge afterwards concluded that the "product" sought was additional fodder for an affidavit of prejudice—proof, in other words, that petitioner's article had hit the mark—we could not say his conclusion was unjustified. It does not seem irrelevant to compare the vehemence with which petitioner contends that it would look badly for its case to be tried by a judge who spoke unfavorably of its conduct, and its industry in seeking out such expressions and printing them.

A judge's reasonable belief that a party was acting with a purpose of disqualifying him, his conclusion that such action was contemptuous and reprehensible, and even a very considerable showing of irritation, is in no way equivalent to personal bias and prejudice. See Baskin v. Brown, 4 Cir., 1949, 174 F.2d 391, 394; Foster v. Medina, 2 Cir., 1948, 170 F.2d 632, 633, certiorari denied 335 U.S. 909, 69 S.Ct. 412, 93 L.Ed. 442; Saunders v. Piggly Wiggly Corp., D.C.W.D.Tenn. 1924, 1 F.2d 582, 585; cf. In re Lisman, 2 Cir., 1937, 89 F.2d 898, 899. Nor does it appear that the judge's specific responses on several occasions indicate that his judgment of petitioner's conduct was either produced by, or led to, a "personal" feeling toward petitioner. Petitioner itself has furnished the proper standard of evaluation. In its affidavit it maintains throughout that its many editorial criticisms of the judge were not personally intended, but were merely comments upon, and criticisms of, particular actions of the judge. "Such opposition was not directed towards [the judge] *personally* but was the expression of a militant editorial position * * *." (Ital. suppl.) Fully to the same extent it can be said that the judge, in criticising petitioner's conduct, was not indicating prejudice against petitioner "personally." When harassed by petitioner's reporter, it might have been ideal for the judge to have remained silent. But, in our opinion, telling the reporter on one occasion that petitioner's article was libelous, and, on another, that its conduct was contemptible, was not intemperate or un-

---

15. We have considerable doubt whether it would have been a technical contempt, cf. Nye v. United States, 1941, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172, but we have no doubt but that a court could regard it as highly improper conduct.

justified in view of the circumstances. Undoubtedly it was primarily from these incidents that the judge formed his opinion of petitioner's purpose, but there is nothing to indicate that these events had any other effect on his mind or conduct. His replies were responsive comments, first when petitioner's reporter asked for his views, secondly, on March 14, when they became pertinent to petitioner's announced intention to file an affidavit.

It is true that the judge's immediate reply to petitioner's announcement, that "there is no reason whatsoever," was unduly precipitate. It is affiant's, not the court's, view of the facts that is controlling. Berger v. United States, supra, 255 U.S. at page 34, 41 S.Ct. at page 233. Petitioner might file an entirely unexpected affidavit, sufficient on its face. If it did so, the court would have to accept it no matter how untruthful it considered its contents. The time to rule was when the affidavit appeared. But this lack of judicial restraint does not indicate personal bias. Cf. Baskin v. Brown, supra; Foster v. Medina, supra. Indeed, the judge's remark suggested the complimentary belief that petitioner would file an affidavit which stated no more than the record facts, which, in due course, petitioner did, and as to which it was entirely appropriate.[16] Nor was the judge's denial that he had been attacking petitioner irrelevant to the issue of the affidavit's sufficiency. This was a necessary part of his ruling that he had done nothing which could have suggested he was affected by petitioner's conduct.

Petitioner makes much of the judge's statement that "so far" he has not chosen to take action. This meant, however, no more than that the judge was willing to give petitioner another chance before he took so serious a step, or that he was waiting for a more conclusive record before so doing. If petitioner was uncomfortable as a result of this comment, it had itself to thank. A party cannot engage in conduct which has the outward appearance of being improper, and then complain of the consequences when its conduct is taken at face value.

 Possibly more troublesome is the incident which occurred on April 26. The difficulty arises not so much from the content of the remarks made by the judge as from the fact that they were made at all. While petitioner complains of the statement that it had been "cursing the referee," we would be the last to say that all judicial language must be dry and prosaic. This was merely a dramatization of the earlier phrase, "in the business of attacking me," to which petitioner had no objection at the outset of the case. Nor could it be said that the judge's reasons for regarding the affidavit insufficient indicated prejudice when they were in fact correct. At first blush the judge's remarks on April 26 might be taken to indicate an over-preoccupation with the case and petitioner's charge of prejudice. This, in turn, might indicate the existence of personal feeling. However, when one reviews the entire record on that day the prominence diminishes. The judge mentioned five other cases in which he had voluntarily disqualified himself or had offered to do so. All were equally introductory to his forthcoming decision. It is not inappropriate for a judge to set forth his reasons for disqualifying himself. There is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is. See Tucker v. Kerner, 7 Cir., 1950, 186 F.2d 79, 85; Sanders v. Allen, D.C.S. D.Cal.1944, 58 F.Supp. 417, 420, appeal dismissed, 9 Cir., 1945, 151 F.2d 534. In our opinion it would have been much better to have omitted discussion of the present case while it was before the court, but it cannot be said that there was undue emphasis when the judge was talking about everything else as well. While it is possible for the two to merge,

16. We would not criticize the court for adjuring petitioner to set forth *all* the record facts. The judge was entitled to have his remarks read in context. See Foster v. Medina, 2 Cir., 1948, 170 F.2d 632, 633, certiorari denied, 335 U.S. 909, 69 S.Ct. 412, 93 L.Ed. 442.

there is a substantial distinction between talking and bias.

The petition for mandamus is denied.

*On Motion for Stay.*

PER CURIAM.

Petitioner has filed a motion in effect asking us to stay the proceedings in the district court until a petition for certiorari which it proposes to file from our denial of its petition for mandamus has been disposed of. The interruption of proceedings in the district court by motions short of permitted interlocutory appeals is not to be lightly undertaken. The granting of petitioner's original motion for leave to file a petition for mandamus was a discretionary matter. We exercised our discretion in its favor only because the complexity of the questions made us hesitate to take action without fuller consideration. Now that this has been afforded and petitioner's affidavit of prejudice has been found to be without merit, we cannot undo the interruption that has already occurred, but at least we do not wish to prolong it. The motion is denied.